May it please the Court, Deputy Attorney General Emily Brinkman on behalf of the State. This time I'd like to reserve three minutes for rebuttal. Just watch the clock, Counsel. Yes. There are two issues that this Court needs to decide. The first is whether the District Court erred when it determined there were additional obligations or ongoing obligations under the settlement agreement preventing the termination of the case. And secondly, whether the District Court abused its discretion in awarding the fees that it did. So I'd first like to turn to the contract issue. The basic principles of contract law apply under California rules, and that's the Court needs to first look at the plain language of the agreement. Then, if there is still ambiguities, the Court looks at the intent or the agreement as a whole to determine what the parties intended. And in this case, there were ten obligations that the settlement agreement set out, such as making changes to the Title 15, making changes to the department regulations. What about Section 7B? Would that be the attorney's fees, Your Honor? What this agreement sets forth is that Prison Legal News has the right to seek fees, and Department of Corrections has the right to oppose those fees. And compliance. Compliance. It says specifically compliance. Well, what the – if you read the language of the agreement, the first paragraph talks about the obligations that the department agrees to do. Those are the obligations that we agreed – or the department agreed to do, and PLN certainly had an opportunity to partake in the enforcement or the monitoring of those obligations, such as making the changes to Title 15 and the department operations manual. Those items were specifically set out in the agreement that PLN had a right to partake in. What was not set out in the agreement is that they had a right to monitor above and beyond those obligations in the agreement. So the – if you look at the language of the agreement, the plain language is that these are the obligations that defendants agree to. PLN has a certain ability to take part in those obligations and enforcement. Well, let's take the actual language, because that's where I'm having trouble. PLN and its attorneys expressly reserve their rights to pursue claims for attorneys' fees, costs and expenses for work performed after the time the settlement agreement is signed by all parties. Why doesn't that end the case? Well, what happened here, Your Honor, is that all parties – we entered into negotiation, we entered into the settlement agreement in 2006. Then the case was filed with the district court. At the time the settlement agreement was signed in December of 06, there were certainly things that needed to be done, and defendants don't dispute that. In December of 06, the Title 15 changes hadn't been made. The changes to DOM hadn't been made. Centralized lists to disapprove publications had not been made. So there was certainly contemplation and understanding that there would be work done after the date of settlement. But PLN is furthering – their argument asserts that beyond those obligations, they have the right in infinitum to keep – What's wrong with that? It says enforce the settlement agreement, including without limitation, disputes over CDCR's compliance. That's pretty good, isn't it? Well, Your Honor, but if you – again, you go back to that first paragraph. I don't – you can't look at just paragraph 7b in itself. You have to look at the agreement as a whole, which requires looking at what the obligations we set out to do in the agreement. Also, the agreement provides for an enforcement provision. If PLN can prove a material violation of the settlement agreement and a constitutional violation, then they have that right to bring that enforcement action, and then the court can get in. Is this ambiguous? Do you think it's a little ambiguous? If you would have drawn it again, would you have nailed it down in such a way, saying expressly, this does not include attorney's fees, you know, for certain activities or something like that, or activities for attorneys are limited to the following, 1, 2, and 3? Well, I think it's hard to say if I'd rewrite it now. I think we have a whole new group of actions that have occurred since December of 2006 that we have to take into account. Well, the point I'm trying to make is the judge that entered this settlement order with this agreement, correct? He's the same judge, is he not, that entered the award of attorney's fees under it? And obviously, he or she read the – I mean, do we owe that judge some deference because he was or she was the judge that maybe not the author of it, but was the author to the extent that the judge signed the order entering the agreement, and then reading the agreement, awarded the fees. Do we owe that judge some deference in determining whether or not he or she read what is entitled to under that agreement? There's two parts to that for an answer. First, the district court didn't take a part really in the settlement agreement. Again, that was entered into and agreed to and signed before it was even filed with the district court. The only time the district court – the first time the district court got involved was truly in November when we had the – 2007 when we had the first case management conference, and the court administratively closed the case at that point. Well, he signed the order, did he not? She did. It was Judge Wilkins. She adopted the order. If you sign an order adopting a settlement agreement, it's your baby, so to speak. She did. But whether – the actual terms of the agreement itself were never read into the record. It was certainly submitted to the court. It was part of the complaint. The judge wouldn't have signed an order if she didn't think the stipulation agreement should be – she wouldn't have signed it if she thought it was ambiguous or if it was not clear or something. But I also think in 2007 when the court did make that first order, defendants don't dispute there were still issues that needed to be addressed that we were still undertaking as part of that – of the agreement. We were still making those changes. We had to go through the Administrative Procedures Act. We had to do all sorts of things to fully execute the agreement. So we weren't at the stage that we were at when the court issued its first as well as the second attorney's fees motion. In October of 2008, that's the point when defendants completed all of the obligations under the agreement. So until then, really, there wasn't much of an issue as to what could or couldn't be done. We were still doing all of the obligations under Paragraph 1. Counsel, you would agree that this language is very broad. Well, again, I think if you look, though, at Paragraph 1 coupled with Paragraph 7 and then the additional paragraph that talks about the right to enforce – an enforcement action requires this material violation and then the constitutional violation. I think if you read those all together, the intent of the agreement itself is not that this case goes on forever without an end. The end is when the obligations under Paragraph 1 are complete. That's one reading. The district court apparently had a different reading of, at least at that point in time, whether or not there were still continuing obligations. And why should we say that the district court, who oversaw this entire settlement process, abused her discretion in making that decision? Well, Your Honor, I think it's – the standard is actually a de novo review standard in determining what the settlement obligations are. And in this case, Judge Wilken added terms to the settlement agreement by indicating no – her express language was that the defendant shall continue to follow the terms of the settlement and plaintiff's counsel may incur reasonable fees ensuring that they do so. There wasn't specific language that – the court didn't specifically go through, okay, 1A is done, 1B is done, but 1C is not done. Did you ask her to do that? What the defendants requested in the briefing up to the December 8th order was that because our obligations had ceased, that so did the court's jurisdiction. We supplied the court with evidence by way of letters and DOM, the changes to the Department of Regulations and Title 15 and other changes. A full compliance? That we had fully complied. So we said at that point – Was your position that you had fully complied simply by promulgating the regulation and ordering the subscriptions? Yes. That was what was agreed to, was that these practices cease – those practices have ceased with the implementation of these policies and these changes. Was it your position that the department had no obligation to make sure that the regulations were followed or that the subscriptions were actually delivered? Well, Your Honor, if – no. No. The department is obligated to follow their own rules and regulations. But what the settlement agreement sets forth is that if PLN wants to bring an action to move to – they have to move to enforce. They can't just simply say we're monitoring your compliance and keep billing us – keep billing the State for that work. They have to make that motion to enforce that we're not – that the State is not complying with its regulations. There's been no such showing to date. All right. Counsel, let's talk about the reasonableness or unreasonableness of the fees themselves. Yes. Were you talking about $137,000, which was the award, is that correct? Yes, for the second award. And how much of that was spent on litigating the fees issue itself? The fees on fees, I believe it was approximately $70-odd thousand. I don't have – I can get that direct number for you. So half of this award were fees for arguing whether or not fees were allowed. Yes. And the range of fees, is it correct that one lawyer, Stanford J. Rosen, was being paid at $740 per hour? That's correct. The range of attorney's fees for 2008 were $170 for paralegal all the way up to $740 an hour for Mr. Rosen. Now, we just had a case involving the PLRA. Why isn't the PLRA a better measure of what the range of fees ought to be in this case? The defendant's position is that the PLRA is actually a very good example, although this is not a PLRA case, and defendants don't assert that it is, but it is a good indicator that the PLRA rates are the appropriate rate. And the rate right now is $177 an hour. And that, defendants have argued and we assert that the prevailing market rate is determined by looking at the skill experience and reputation of areas, of that area of practice, which in this case are civil rights litigation. Was there any reference to PLRA in the agreement? No. Well, if there is, it's to say that the PLRA is not applicable. But you could have said that the attorney's fees will be guided by the PLRA comparable rates, couldn't you? That certainly could have been an argument or a term that we had agreed to, but it's not a term that was agreed to. But defendants assert that the PLRA is a very good indicator as to what the prevailing market is, because the firms relied upon by plaintiff's counsel are firms practicing business litigation, securities litigation, high-end state litigation. Why do you need a securities litigation expert who is familiar with the SEC and all of their rules and regs to deal with a prison news case? You shouldn't, Your Honor. Well, I should be asking other counsel. But the last question I guess I have for you is, what's the end game here? Is this going to keep rolling at 740 an hour, 740 an hour indefinitely? When does this come to an end? Defendants are asking that same question, Your Honor. And I think it's also important to look at the rate increase as well from plaintiff's counsel. In 2007, between 2007 to 2008, the rates increased from 5 percent up to 15 percent, depending upon which attorney was billing. And so if you're looking at 15 percent increases over the next year. No, I'm not talking about the rate. I mean, that will continue to go with inflation. No, I'm talking about this proceeding. Isn't this over? Isn't this done? Isn't this finished? Yes, Your Honor. Once the obligations are complete under the settlement agreement, there's nothing left to do. The only thing that could occur is if prison legal news brings a motion to enforce because they have, that there's a material violation of the settlement agreement and a constitutional violation. And that's what's set forth in the agreement. So you as the state intentionally left this open-ended to let this thing keep on going. It's your, you signed this agreement. Certainly the state did sign it. But again, in looking at what those obligations are, it seems very clear from the state's position that once we completed those obligations, that really should have been. You could have sold it up completely. I mean, you could have put an end date in there. You could have, you know, said that once we sent the subscriptions out, once we changed the regulations, we're done. I mean, it's in your control when you're writing the contract to put tight language in there. That's part of the responsibility of the attorneys is to make it so tight that you don't have these questions to arise. It certainly is. And unfortunately, that's not the agreement that's before the court, though. Don't you have to go back to the district court in order for, to have an order entered that jurisdiction is no longer retained? The aims and objectives of the agreement have been satisfied and I no longer retain jurisdiction. Is it, does it lie in our mouths in the province of this Court to say that jurisdiction is no longer appropriate and further fees for compliance are no longer to be asked for? Or does that have to go to the district court? Your Honor, defendant's position is that because this is a de novo review on the contract interpretation, that this Court can say the obligations are done, we've reviewed the record, there's nothing left to remand to the district court to dismiss for. Well, is it more appropriate for us to do that or for the district? Is that a hot potato we should pass on to the district court? Your Honor, I think. I mean, are we in an appropriate position to say this thing and make that determination? Or is that particularly a factual determination which district courts make? We only make legal determinations. Certainly. But the district court does or can make those factual determinations. Well, didn't she reject your request? In one line, she did, Your Honor. Yes. And our position is that, or defendant's position is that under the de novo standard review, she did not look at the terms of the settlement agreement. She added additional obligations. And that was her, that was where she erred. So what's our standard of review? You're asking us to overrule her refusal to terminate the jurisdiction of the agreement. Yes. So what do we look at? It's a de novo standard of review. So what do we look at? You look at the record before you, which is, there have been numerous, there's a voluminous record on this about all the contacts between the parties, the actions that have occurred, the defendants did submit all the actions that they took to complete those obligations, and those are all in the record before this Court. Well, in other words, what you're telling us, if I hear it correctly, is that we should look at this record and make a determination that we've looked at all the facts, and as a matter of law, there is no further dispute that should or could arise between the parties. That's correct, Your Honor. That's a pretty heavy load you're asking us to carry, isn't it not? Or is that something that I don't like to give someone else work that I should do, and I probably wouldn't, but I'm not going to. Is that something that's more district court work rather than court of appeals work? I mean, is it for the district court to say there's nothing more to do, and you disagree with the district court and appeal it to us, and we reverse the district court, saying, oh, there is or is not more for you to do? That's what I – that's what's occurring here. We made the application. The defendants made that application to the district court. The district court said in one line, no, and we're – Well, the district court then made a determination that there – but there continues to be work to be monitored and complied with and under the settlement agreement, and therefore, he should – she should retain jurisdiction to make sure that the settlement agreement is complied with, correct? So you want us to reverse the district court's determination and say, as a matter of law, we've looked at these factual disputes and there's nothing more to do. So you want us to close shop? Yes. Okay. I understand. I see that I'm out of time. You certainly are. Thank you very much, counsel. Our questions took you over time. Counsel? May it please the Court, Ernest Galvan for prison legal news. A free person, not a prisoner, and that's why this is not a PLRA case. Could you start the clock, please? The defense never made an application or motion to ask the district court to exercise her discretion to terminate this case. What they did was one day, one day, after they issued a memo, one of their manifold obligations under the settlement agreement, they threw in nine lines into an opposition to a free request. And they said, look here at my declaration. I issued the memo. I've done everything. Please now terminate the jurisdiction. There was no motion. There was no procedure. Nothing. So there's nothing for us to review then? Is that what you're saying? There is no abuse of discretion in the district court denying a last-minute thrown-in, tacked-on request to terminate jurisdiction without any showing that the case was over, without any showing that the obligations that are clearly set out in the settlement agreement have been completed and its purpose fulfilled. But what remains to be done under the settlement agreement that has, that requires further compliance and monitoring? The settlement agreement includes not just issuing memoranda. It has action words in it. They shall cease certain activities. They shall issue regulations. And it says they shall enforce them. In other words, what my client gave up the right to a trial for was that censorship of his newspapers, books, and magazines would stop and that the local freelancing by wardens and administrators would be replaced by consistent, centrally enforced guidelines for how publications get in in a manner consistent with legitimate interests. And you've got that. That has happened. And we got that in an agreement that does not have a cutoff date. It doesn't say they do it one time and then they stop. It doesn't have a termination date. It retains jurisdiction to enforce these positive affirmative obligations. Counsel, is there an end in your view to the settlement agreement, the monitoring that you're billing for? Is there an end to that in your view? Yes, Your Honor. There is an end. And it's precisely the end that Judge Cowen pointed to, which is that when the State comes in and makes a proper showing that the purposes of the settlement agreement have been fulfilled and demonstrates to the satisfaction of the district judge that the unlawful practices will cease, that the centralized guidelines will be enforced, then at that point it becomes proper for the district court to examine whether continued jurisdiction is necessary. This is more like a consent decree to me than a settlement agreement, because traditionally settlement agreements are entered into and the judge signs off on them and then you're done. This is being operationally conducted more like a consent decree. And the thing that bothers me the most about this case is that, you know, from the record it appears that your firm can decide to churn the hours. Any time you want to go talk to some prisoners and see if they have any gripes, you do that and then you bill. From the record, we can't do that. Some of the billing is at $740 an hour. Yes, Your Honor. Some of it is. A very small part of it. The part that's consistent with a high-level partner supervising much lower-rate people who are doing the real work. You'll only find fewer than a score of merits hours, I think fewer than 15 merits hours for Mr. Rosen, who is properly supervising much lower-level people to do the real work. But just staying for one moment with the actual agreement. The fact that this is ongoing, the way you've described it, doesn't that ameliorate in favor of construing this agreement as not requiring or allowing you to charge fees for continuous speaking to people and monitoring it in that fashion? Since I have never seen a settlement agreement, certainly I would not enter one where I'm the paying party, which says anything that you can obtain continuing attorney's fees, unless it expressly said you could obtain attorney's fees for continuing to monitor something. So what you're saying is you have an open-ended agreement here. And if that's the fact, then my thought is it doesn't sound reasonable that the government would have agreed to such an agreement, that I should read it, that if you could monitor it and you find a problem, you could file a lawsuit saying that the agreement is not being adhered to. And from that point on in the lawsuit, if you're a prevailing party, you're entitled to fees. The way you construed the agreement, an attorney can flatten up a file. I'm not saying you're doing this. I'm just saying it can be done. And it would be the natural inclination for people to want to know that they could continue to earn attorney's fees without having filed a specific lawsuit saying the agreement is not being adhered to and here's what I have. And then if they prevail, get an attorney's fee. Why shouldn't we construe that agreement in that way, especially since the agreement does not say anything about continuing attorney's fees for this monitoring and substantial compliance? Well, as Judge O'Scanlan pointed out, the agreement at 7b does say something about continuing attorney's fees. It says the parties can't agree and they submit the matter to the district judge to decide. These parties know the law on continuing attorney's fees that are useful and of a type ordinarily necessary to advance relief that's secured in a civil rights case. It's the law that's stated in Delaware Valley, Pennsylvania v. Delaware Valley, and this Court's precedents like Keith v. Volpe. And so that's the contract we have. As for churning the case, we've got a tough cop who's looking at the fees in this case, and this district court knocked down more than 10 percent, almost 15 percent of the hours here, because the district court found they weren't documented in a way that showed they were related to the settlement. No one is accusing you of churning or saying anything like that. There's an objection to the level of the fee, but they're not saying you're churning. They're saying that, number one, you're not entitled to any attorney's fees and that whatever fees you sought were at a too high a rate. But my thought is, why shouldn't we read this agreement and say you're not entitled to an attorney's fee unless you file a lawsuit if you file a violation of the agreement? Because the plain language of the agreement is to the contrary. The plain language of the agreement is that attorney's fees for work done after the settlement. Are you relying on 7b? 7b, yes. That's the plain language of the agreement. But what about opposing counsel's argument that you can't read that in isolation? You have to look at that in conjunction with what the actual terms, substantive terms of the agreement say. I couldn't agree more. And that's why it is error to do what the State is trying to do, which is pick out the very clearly finished things. Like we issued a memo and say, well, that's all we had to do. The case is over. They leave out the other eight things that are in paragraph 1 that my client is depending on to continue to be done, and that especially the words shall be enforced, certain practices shall cease, publishers shall get notices when their things are withheld, and the continuing subscription, which isn't just a continuing subscription. It specifically says in there that those magazines have to be in the law and satellite law libraries. These are all continuing obligations. And so, yes, when you read 7b in light of all of paragraph 1, not just the part that the State's like, that the State likes this week, then you see continuing obligations. Well, counsel, I'm speaking for myself. I think this is the most generous settlement arrangement I have ever seen a public entity ever sign. Obviously, it was confirmed by a U.S. district judge. But the willingness of the State of California to be as open-ended as they are and to agree to a range of fees, which are essentially private practice securities-level fees, when the comparable amount should be looked at primarily from a PLRA standpoint, is out there. But that's not your problem. That's their problem. They have entered into this, and it seems to me that you've identified through section 7b a basis for maintaining the position that you have. Now, I guess the bottom line for me is, is there any way that this could be construed to put some sort of a PLRA-related measure on the fee range? Only by reversing the well-settled civil rights fees decisions of this Court and the United States Supreme Court and every other circuit. The purpose of the civil rights fees statute is to enable civil rights victims to secure competent counsel. And this case could just as easily have been brought by an individual inmate alleging that he wasn't able to receive the prison legal news, and it could have started it that way. It wouldn't be this case. This case is about the First Amendment rights of a speaker, of a free non-prisoner, a nonprofit corporation to speak and be heard. It is not about the rights of prisoners to get whatever publications they want. It is partially, because that's the second component of it. That's why you're monitoring. If that wasn't part of the equation, you wouldn't be monitoring to see if the inmates actually received the material. They are certainly incidental beneficiaries of the settlement, as they are of the First Amendment. But the rights at issue here belong to my client, a private free person. Well, I agree with you that, for myself, that the rights, the First Amendment rights here which are being aired are your rights to publish and to be heard, and for others, incidentally, to read whatever you publish. But what remains, if we agree with you as far as the fees and that they're whatever level we say are proper, that you're entitled to here, what — there's also an application here that we — that we reverse the district court and say that there's nothing more to retain jurisdiction on, which would allow you, of course, to file another lawsuit if your agreement is violated and obtain fees under that lawsuit, but not under this settlement agreement. What remains to be done under this settlement agreement, if we agree with you on your main case, but do disagree with you as — or how can we agree with you that the district court should be affirmed in retaining jurisdiction? What remains to be done under this settlement agreement? Well, first, the — I agree with what Your Honor said about the — what it would take to reverse the district court. You would have to basically have a trial here. I mean, when you asked my able opponent, you got a recitation of facts. There's this letter, and then there's that letter, and there's all this factual dispute. And that's exactly what the district court did. She — she made a factual decision. Well, why can't we find, as a matter of law, we've looked at these facts, and — and that factually we've looked at, and as a matter of law, we find none of these facts are sufficient to retain jurisdiction? You would only be able to do that if you could rewrite the contract. No. We could say she clearly erred in her factual determination after looking at the facts — all of the evidence in the case, that her factual determination was clearly erroneous. What remains to be done? Tell us what remains for you to do to monitor that your First Amendment rights are not violated by the government. First, we have a live dispute about the settlement obligation that the State claims to have fulfilled on October 21st, just nine days before they moved for termination. That's with regard to the mechanism for having a centralized list of disapproved publications. They undertook that in a way that's inconsistent with the settlement agreement because publishers don't get notice when their things are held out. Second, there is the entire litany of practices — of obstructing practices that were the requirement that there be vendor labels on a publication before they can come in through the mailroom, the list — use of abuses of lists of approved vendors, the failure to send notices when something actually is held back for a legitimate penological interest, like it might threaten the security of the institution. All those things, those — performance needs to be demonstrated of those things. And it's important to look at what happens if you get into the sequence of facts here. The — the settlement agreement says that everyone expects that the preliminary stuff is done April 1st, 2007. That's about the same time that the dismissal and approval was to be filed. Well, in fact, the preliminary stuff got done, the issuing of the memos and the policies, October 21st and October 29th, 2008, one and nine days before they asked to terminate. The preliminary stuff is supposed to set the stage for the actual performance. In other words, once you publish your policy that says, stop the unconstitutional practices, that's what makes the wardens stop the unconstitutional practices. They delayed, dragged their feet. We had to push them at every turn. Where is your preliminary memo? Where is your stuff? Finally, they come up with it 18 months later, and then they say, it's over. Terminate jurisdiction. Well, that was — that was the setting the table, not the eating the meal. They set the table and now say the meal is over. That's completely inconsistent with the agreement. And they — the record they put in in support of that, all they gave the district judge to look at was, look, here's our memo. We're done. Look, here we set the table, the meal is over. Well, my client didn't get fed. My client didn't settle for paper policies. We — the record in here shows we already had paper policies. They already had a memo that said, don't illegally block the publications. The whole point was they weren't complying with it. And so this manner — if the district court had done what they asked, that would have been an abuse of discretion, because that would have been completely inconsistent with the purposes of the settlement agreement. Would you hazard a guess in terms of how many more billable hours it will take to resolve this case? Fewer and fewer as time goes by. Because as you — as things get knocked down, as — I mean, most of the hours in here are back and forth negotiating and prodding to get these preliminary things done. As those things are done, the hours are going down. I mean, once you get into just ensuring that performance happens, there's a lot less of this high-level, you know, high-level lawyer calling their high-level lawyer negotiating over the terms. Then it becomes much more low-level people doing low-level looking at things. Just to back up to Judge O'Sandler's preliminary questions to you, the fees here — what district of California are we in here? We're in the Northern District here in San Francisco. Okay. You went out of the Northern District to — for the hourly rate here, did you not? Why did we — we chose the Northern District because venue was proper here in the Northern District. We're in the Northern District. But getting back to the attorney's fees under, you know, Ninth Circuit law, indeed under all laws, as far as I know, all the circuits, you should have stayed within the district of the Northern District to — for comparable rates. And I'm a little concerned with the level of some of the rates that were charged, and I don't think they were in the Northern District, were they? It wouldn't have made much difference. If we had filed this in the Eastern District in Sacramento, where they are, rates are not that much different. And we've been awarded our Northern District rates in Eastern District cases because of the dearth of counsel willing to do these kinds of cases and go up against them. Well, you have a First Amendment claim here, and don't have to look at a comparable rate for attorneys in the Northern District doing First Amendment constitutional litigation. See, that's the kind of micro-market theory that the Third Circuit and the Ninth Circuit have rejected. I mean, the key case is the one that the amici cited, the Esperg case, the Student Public Interest Research Group case. It's a scholarly review of how do you set prevailing market rates. And the Third Circuit in there looks — and the Ninth Circuit later adopts this — they look at all the possible bases for figuring it out. And one of them is this micro-markets idea that my able opponent is advancing, which is, okay, well, it's people doing civil rights work involving prisons. That's the micro-market. And the Third Circuit and Ninth Circuit have said that's not the — that's not consistent with the purpose of the civil rights laws, because you could always slice it up very small, but the idea is to get able counsel who can do work of similar complexity and a similar level of skill. And this is not that different from securities law. It is very complicated to apply the First Amendment when you overlay all of the exceptions like Turner v. Safley that apply in a prison context. Roberts. Counsel, our questions have taken you way over time. Thank you very much. Thank you. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Cowen, O'scannlain, Rawlinson